We'll turn to our final argument of this morning, Appeal No. 22-1641. Live Face on Web, LLC v. The Cremation Society of Illinois and others. Jim Borshe, good morning. May it please the Court, my name is Jim Borshe, I represent the Cremation Society of Illinois, Illinois Commission Direct, and Katherine Sullivan Frideris. The District Court erred in this case by denying my clients reimbursement for the attorney's fees, expenses, and costs they incurred in defending against plaintiff's claims for copyright infringement for five years before they were dismissed with prejudice. There's no dispute over the fact that my clients' prevailing parties prevailed in all the claims the plaintiff brought. The standard for awarding fees and expenses is a strenuous one, and that is there's a very strong presumption for defendants that they get awarded attorney's fees and costs for prevailing in these kind of cases to incentivize defendants to defend these claims and to deter predatory litigation. To overcome that presumption, there has to be clear and convincing evidence that the defendant did something in the case worthy of punishment according to the Congregational Attachment case that we cited. The District Court abused its discretion because there was none of that evidence here, and the discretion the District Court has in these kind of circumstances is very confined. Mr. Borsig, can I ask you a question? I don't know what's going to happen in this case, of course, but it seems to me that if the District Court made an error here, the District Court made an error when it disregarded the presumption in favor of your client by saying Google intervened. I mean, to me, that's like saying, well, a jury intervened and decided the case, and after the jury intervened and decided the case, the plaintiff walked away, so there should be no fees. But if the District Court got that wrong, then does the District Court have to evaluate the Fogarty factors all over again with the strong presumption in favor of fees, or is that something that we should do? I think you should do that. Why? Well, because I think that's part of the analysis here, is I think the courts have said the Fogarty factors are still in play, but before you get to those factors, you have to overcome the very strong presumption, which in this case, there's no evidence in this case that my client did anything wrong. So the Fogarty factors come into play, but first I think you have to get through the presumption that in this case was not met by the plaintiff in this case. I mean, there's simply, the District Court has added two reasons for denying fees. One is he said there was a change in the law. That's false. Google even says we are not changing the law on fair use. So all Google did was apply existing fair use law. Well, if there was a change in the law, I mean, that happens all the time in litigation. That's a risk that both parties take. That's why they litigate. Sometimes there's a dispute on the fact, right? Sometimes there's a dispute on the law. That's the reason for litigation. But I agree with that, Justice Gertz, but the issue is Google says we are not changing the law. So the issue here is District Court also said the defendants did not prevail because of their defenses. That's also false. I mean, if we had not pled fair use, which is affirmative defense, you have to plead. If we had not pled that, the plaintiff wouldn't have the argument here. So we did prevail because of our defense in the case. So the lawsuit in this case we have shown, under Fogarty, was unreasonable for a number of reasons. The suit was time-barred. He sued Ms. Frideras personally on no basis for Duke to do that. They also claimed this ridiculous amount of damages, almost $500,000. Before this lawsuit was filed, my clients had licensed from the plaintiff this very same software for less than $400. And they asked when they filed the lawsuit, we want $400,000. Where is that coming from? So they also alleged, despite saying that their code was stolen by Tweeple, they alleged that our infringement was willful. There was never any evidence to support that. So they have a number of factors that their lawsuit was improper. The motivation to file the suit was not to protect their code. It was to try to extort money from my clients, a lot of money. Mr. Borcia, what I think the challenge is for me, is as I hear your argument, it sounds exactly like the argument you made to Judge Blakey. Well, that's true. Right. And this is a case where the litigation went on for quite a while. There was a lot of discovery. But one thing that was continuous all along was the district court judge. There weren't multiple reassignments of the case to different district court judges. So he sat there the whole time, had a very close vantage point to it. And at the end of the day said, Mr. Borcia, it's not that I don't understand you. I just, I don't agree. I'm going to exercise my discretion. So given the standard of review here, I mean, isn't it heavy handed for us? Given all of these factors, they're all thrown in the hopper. District court has a very close vantage point to it all. I'm just not going to award fees here. Well, I think that's the problem with that reasoning is it goes against this court's standard. And that is the very strong presumption. Because the district court found there was a change in the law. That's false. Google did not change the law. I mean, you're saying that based upon, why did the U.S. Supreme Court grant review in Google in your view? Why did they grant certiorari? Well, there was obviously some issues that they wanted to address, Judge. Right, right, right. But in their opinion, they say we are not changing the law. Okay, so while fair use with respect to code is unsettled, while Google is pending before the U.S. Supreme Court, the case remains litigated in the district court. Correct. Google comes out and you're able to say, oh, I read Justice Breyer's opinion. It doesn't look like the law changed. Okay? You don't know that ex-ante. But Google was never cited in this case before that ruling came down. And before that ruling came down, the plaintiff wanted out of this case. Say it again? The plaintiff wanted out of this case before Google. I mean, they say, well, you take a walk away. They sued my clients in Pennsylvania, which the judge found was vexatious. What difference does that make? What difference does Google make? I mean, in here, that's why I asked you the question. It's a similar question to what Judge Scudder asked, because if the judge properly applies the presumption, the balancing test begins here, okay, in favor of fees. And in order to not get fees, the plaintiff needs to come to here. When the judge says, ah, no presumption here, the judge starts here. So then there's just this tipping of the scales in favor of no fees. So my question is not whether the judge got the weighing of the scales wrong. It's whether he started from the wrong place by saying, well, this was a close case. And at the end of the day, defendant won. That, to me, does not—that happens in litigation, and that's not the test. Correct. I agree with you, Judge. And the problem here is what he found was that Google actually levels it. And there's no precedent to say a change in the law somehow disrupts the presumption. But if we find that way, shouldn't we send it back to Judge Blakey to say, start here and weigh the Fogarty factors, and maybe he's going to come out in the exact same place he did before, but he's going to do it by applying the strong presumption in favor of fees. I have no problem with that. Because the problem here is he found that the change in the law was somehow a disruptive factor to the presumption. And the fact is, there's no precedent for that anywhere, to say that because the law changes or the facts change from what you presented when you filed the case, that somehow the presumption should be done away with. Because that's the risk. I mean, they filed a lawsuit in Colorado against another defendant, Integrity. They prevailed. What did they say? Well, fees are easy to get in these cases. They're presuming they get fees. Why shouldn't the same rebound against them here? We cited the Rockford Mapp case, which filed recently, district court, and almost the same facts with the same damages sought. The plaintiff was a copyright troll. Its damages were unrealistic and awarded $400,000 in fees against the plaintiff in the same kind of case. You didn't have a situation where they sued my clients in another venue. I don't know if we could say it's the same case when there was the statute of limitations issue there, the clear losing issue there. But you raised a second issue I'd like to turn to before you're out of time, which is the Copyright Act and Rule 54. And, you know, is it at all clear that if costs have been rejected under the Copyright Act, that they then can be awarded under Rule 54? And I'm wondering, are we in a position to fault the district court for leaving that argument alone as underdeveloped when you did not answer that question about the interplay between the two? You did cite Rule 54 as a basis. I saw that. You did cite it as a basis. It was kind of buried in a case site for costs, but did not explain whether the judge, in your view, could still award costs under Rule 54 if the court found that it shouldn't be awarded under the Copyright Act. So just one thing about the statute of limitations. We did have the same defense here. The difference is here the plaintiff dismissed the case before the judge ruled in summary judgment on that issue. So we did have a limitations argument. In fact, I think we have a better one in that case. But the issue on the cost is we did present as an alternative 54 or the Copyright Act. And you're not bound by either one of them. If the court doesn't find fees under the Copyright Act or costs under the Copyright Act, you can still get fees under Rule 54. There's no exclusive remedy there on that issue. So we asked for fee costs under both of those provisions. The district court denied that. And there's no reason that's even a higher standard in the costs than it is for fees. So we believe we certainly met the 54 elements about the Copyright Act elements. I think my time is up. Okay. Very well. Thank you, Judge. Mr. Santuri, good morning. Good morning, Your Honor. May it please the court. I'm Ryan Santuri. I'm here on behalf of Live Face on Web. I do want to – I mean this is a unique case. This is neither side cited a case where somebody sought fees when a party dismissed the case because they reasonably believed there was a change in the law. That's actually a very good point. Can you cite me to any case in the Seventh Circuit or any other circuit that says when there's a change in the law or the facts during the litigation, which results in one side abandoning the case, the presumption in favor of fees goes away? Well, Your Honor, no. In fact, I can't cite you to a case that says – I can't cite you to a case that's ever looked at fees under 505 when a party dismissed a case pursuant to Rule 11, period. Now, I know that there was a lot of discussion about the judge eliminating the presumption of fees, but he said the opposite. I know he said the opposite, but if Google had come out the other way and the defendant walked away from the case and settled with you for $500 or whatever, you would have sought fees, right? You wouldn't have said – you wouldn't have walked away and said, well, we understand that Google changed the law and, therefore, that's why we won the case. I mean, that's why cases are litigated in the first place. I mean, that's like saying, in my view at least, what's different than saying we took the case to trial as the plaintiff, we lost, okay? And rather than filing post-trial motions, we walked away. And because we walked away after the jury decided against us, the presumption in favor of fees for the defendant goes away. What's different here? I don't think anything's different. I don't think the presumption against four fees ever went away. I think that what the district court did here is he looked at the O'Brien v. Knott case and he said, hey, since a bunch of these earlier Seventh Circuit decisions, this court in O'Brien v. Knott recognized, yes, there's a presumption versus fees, but the Kurtzsang Supreme Court case specifically says, hey, you still have to look at factors. Yeah, but the rationale of O'Brien actually supports their argument because the rationale of O'Brien says there's a strong presumption in favor of fees so defendants are not under pressure to abandon a meritorious defense and settle. That's what they did here. They stood on their meritorious defense and didn't settle. Google, whether you take Judge Blakey's word for it or not, Google comes out, and I accept your representation that Google comes out and you walked away from it. So the rationale from O'Brien says that there is this strong presumption of fees and it fits right all square here because they didn't walk away. They stuck with the litigation. How do you respond to that? O'Brien said, yes, there's a strong presumption of fees, but that's not the only thing that carries the day. You have to look at the factors, and here the judge found that none of the factors favored under these discretion. Well, that's not true. How many lawsuits has your firm filed on behalf of this particular client claiming copyright infringement? A number of them. Over 100, right? Our firm has not. I don't believe, but I know that the client has filed over 100 lawsuits. Hundreds? Yes, sir. Okay, and Judge Blakey found that that weighs against your client at least a little bit, and then there was the frivolous lawsuit in Pennsylvania that weighed against your client. He didn't find – nobody found that case frivolous. He said that he believed that that was partially vexatious, but he also acknowledged that that was a different – that in that case, that judge recognized that that was a different claim from here, and that was a case that was dismissed with each side bearing its own costs and fees. But ultimately, on the factor where he looked at whether this was frivolous or vexatious, he did not find it to be. He said, yeah, sure, there's some evidence that the defendant's site that says that, but I still don't see that that carries the day. He found – he also found that given the exact same case that I presented at trial in Colorado and won with the jury and through post-trial motions, that that mirrored this case. Nothing was different between that case and this one. But that didn't suggest it was objectively unreasonable, and I do think that that is where the courts have really been looking at. That's sort of the primary factor is, is it objectively unreasonable? And here there was no evidence to suggest that. What I think from our position is, and I think that this is what the judge really focused on, is what is a litigant to do if you recognize that what you reasonably believe is a significant change in law that moves your case from likely success, like we had in Colorado, to likely failure and potentially getting hit with fees against you, aren't you supposed to, under Rule 11, notify the court of the change in law? No doubt. But how does that save you from the presumption? That's a motion for summary judgment. The judge decides a law. Maybe the judge denies summary judgment but decides the law in a manner in which you're clearly not going to win at trial. And so the plaintiff walks away from the case. How does that save you? You understand my problem that I was discussing with Mr. Borshaw. I'm afraid the judge should have started balancing the factors from here, but the judge started from here. And if the judge started from here, maybe the result is different. Well, I don't think that anything about the scenario changes the presumption. But I believe, and we have to take the district court at his word, he says, I recognize that there's a presumption, but that's not the only thing I look at, and that's what the O'Brien case said. And I noticed when I was preparing last night I made a mistake in my brief when I said they didn't cite anything after that Curt Seng decision. They did make a reference to the Design Basics v. Kierson's case that Judge Scudder actually wrote the opinion. That was a case where it went for the home plans, where the court did acknowledge the same thing, that Curt Seng says, hey, yes, there's a presumption, but we also have to consider the factors. And here that final factor, not only did the court find that this wasn't objectively unreasonable, but that final factor about we have to consider the balancing the Copyright Act and promoting the rationale for it, here you have essentially, is it really balancing the benefits of the Copyright Act, that fourth factor, when a party says, Judge, we believe there was a significant change in the law that kills our case. Can you pause on that for me? Sure. So explain to me the best you can what aspect of the Supreme Court's reasoning in Oracle you think affected a substantial change in fair use law. Sure. So in leading up to the, and recognize that the Federal Circuit had found against fair use, strongly found against fair use, and it was picked up by, based on the prior standards set by the Supreme Court, and this was reversed, and I think that really Judge Thomas, Justice Thomas in his dissent makes the best argument for me because he goes through and talks about how this is not transformative in the way that we have always talked about transformative before. This is when our prior precedent says you can't cut out the heart of the copyrighted work, and here the admitted evidence in the Google Oracle was that they could have copied like 170 lines instead they copied 11,500. In the Sony case, going back to the old Betamax case where they talked about fair use in a different, you know, in the context of motion pictures and TV, it was presumptively unfair if you were using it for commercial purposes. So here, the way I saw fair use lined up beforehand is we have commercial use by a party. They were using this in their advertising, which is presumptively unfair. They were using it in exactly the same way as how it was used by my client's customers, so it's not transformative. They took, the code that they took was more than 50% of the lines, and without those lines the program doesn't work. Those were all factors that lined up with fair use in my view as somebody that does IP law a lot, and here when we get to the Supreme Court, suddenly the most important thing by the Supreme Court is somehow like a public policy argument on, hey, look at all the consumers that would be impacted if you did this. It doesn't matter that Google saved itself millions, maybe billions of dollars. It doesn't matter that they took far more than they needed purposefully, and so especially in the context of the first case ever for source code and fair use, we had Java code, 11,500 lines of Java code intentionally copied to avoid paying for not fair use. Here I'm going to have to tell the jury they copied a few hundred lines of my client's code. It was the heart of their code, but it was being copied on their website and have to say that somehow that's different from the Google case, and so I think that between Justice Thomas' dissent and also Professor Nimmer who writes treatises on this, he specifically, I noted in my brief, that all the factors were basically reordered by this one decision, and so I think I briefed said that there were more than 50 law reviews at the time. I looked last night. It looked like there were several hundred now that have talked about the impacts of this change. Let me ask you a question. Should we be at all concerned that in analyzing the Fogarty factors, the district court never once mentioned Catherine Sullivan Frideras, who your client sued on an individual basis just based on the fact that she registered the websites? Sorry, I wasn't sure if you were done. I don't believe that has any impact, Your Honor. No, that was the subject of motions to dismiss that were denied. I mean, ultimately, she was identified in public documents as essentially the owner of the website for purposes of how websites are registered, and as the owner, the allegations were that she had control of it and had the control of the code on it. Certainly, had there not been a change in law, I'm sure that that would have continued to be litigated, but I don't believe that has an impact on the question of fees here. Okay, very well. I apologize for going over my time, Your Honor. No, that's okay. Mr. Santuri, I think your time had expired. Oh, I'm sorry. No, thank you very much. It's Mr. Borcia. I think your time had expired, but we'll give you a minute for rebuttal. We kept Mr. Santuri a little bit longer. I just want to bring up one thing that you already brought up. Yeah, Ms. Frideras never should have brought up the case. In fact, they learned in discovery that she was not the owner of these websites, and yet they kept her in the case for years. The other issue I want to address is Mr. Santuri suggesting this was a Rule 11 issue. It wasn't at all. They didn't even suggest in the district court it was Rule 11. In fact, they said in the district court they could distinguish the facts in Google from this case because in Google, less than 1% of the plaintiff's work was copied. In this case, the plaintiff alleged 40% of their work was copied. So they even said in the district court that Google was factually distinguishable. The bottom line here is the presumption, their very strong presumption applies here. There's no exception they have ever shown to prove, and therefore their discourse should be reversed or remanded to our district court to properly evaluate the factors given the presumption. Thank you. Mr. Borshett, thank you. Mr. Santuri, thank you. We'll take the case under advisement. That concludes the day's arguments, and the court will be in recess.